## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROXANNE DORWARD and
SHARON PUGLIESE,

          Plaintiffs

    v.

VERIZON PENNSYLVANIA, INC.,

          Defendant

CIVIL ACTION NO. 1:14-CV-01943

(KANE, J.)
(MEHALCHICK, M.J.)

### REPORT AND RECOMMENDATION

Plaintiffs, Roxanne Dorward ("Dorward") and Sharon Pugliese ("Pugliese") instituted this action on October 7, 2014 by the filing of a complaint (Doc. 1) against Defendant, Verizon Pennsylvania LLC[1] ("Verizon"). In their complaint, Dorward and Pugliese allege that Verizon discriminated against them in violation of the Americans with Disabilities Act of 1990 (the "ADA") and the Pennsylvania Human Relations Act ("the PHRC"), 43 P.S. §§ 951-963, et seq., in that Verizon failed to accommodate their disabilities and failed to engage in the interactive process required by the ADA. (Doc. 1). Defendant asserts it is entitled to summary judgment on the grounds that Plaintiffs are not qualified individuals with a disability under the law, that Plaintiffs' requested accommodations would have required Verizon to breach its Collective Bargaining Agreement, Verizon fully engaged in the interactive process with Plaintiffs, and there is no evidence to support Plaintiffs' claims. In response, Plaintiffs submit

---

[1] Plaintiffs identify the Defendant as Verizon Pennsylvania, Inc., but the correct name of the entity, according to Defendant, is Verizon Pennsylvania LLC. (Doc. 28-1, at 1).

that summary judgment should be denied as there is a material question of fact as to whether Plaintiffs can perform the essential functions of their job with or without a reasonable accommodation, and thus, whether Plaintiffs are "qualified individuals" under the ADA and PHRA.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The factual background is taken from Defendant's Statements of Undisputed Material Facts (Doc. 28-2) and Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts (Doc. 34), to the extent the facts are admitted or otherwise undisputed. Where the parties dispute certain facts, those disputes are noted. In addition, the facts have been taken in the light most favorable to the plaintiffs as the non-moving parties, with all reasonable inferences drawn in their favor. This is in accordance with the Local Rules of this Court, which state, in pertinent part, as follows:

> **LR 56.1 Motions for Summary Judgment.**
>
> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.
>
> **Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.**
>
> **All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.**
>
> Local Rule 56.1 (emphasis added).

To comply with Local Rule 56.1, Plaintiffs should (1) clearly and unequivocally admit or deny whether each fact contained in Defendants' statement of facts is undisputed and/or material, (2) set forth the basis for any denial if any fact is not admitted in its entirety, and (3) **provide a citation to the record that supports any such denial**. *Occhipinti v. Bauer*, No. 3:13-CV-1875, 2016 WL 5844327, at *3 (M.D. Pa. Sept. 30, 2016) (emphasis added); *Park v. Veasie*, 2011 WL 1831708, *4 (M.D. Pa. 2011). As such, where Plaintiffs dispute a fact set forth by Defendant, but fail to provide a citation to the record supporting their denial, that fact will be deemed to be admitted.  "Unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F.Supp.2d 490, 493 (E.D.Pa. 2010).

Verizon is a broadband communications company servicing a wide range of residential and business customers throughout Pennsylvania. (Doc. 28-2 at ¶ 13). A critical component of Verizon's business model is selling products and services and providing direct customer support over the telephone. (Doc. 28-2 at ¶ 14). The Company employs Consultants as its representatives during these phone calls. (Doc. 28-2 at ¶ 15).

Verizon hired the Plaintiffs in this Consultant role and they performed these customer consulting duties for varying periods. (Doc. 28-2 at ¶¶ 24-25 & 56). Eventually, both Plaintiffs suffered from stress and anxiety, rendering them unable to interact with customers and diminishing their capacity to talk, think, concentrate and relate with others. (Doc. 28-2 at ¶¶ 35-

36, and 61).[2] Plaintiffs' stress and anxiety resulted in each of them requesting a work accommodation of working as a Consultant with no customer contact. (Doc. 28-2 at ¶ 37, 62).[3] Defendant granted Plaintiffs' request for a no customer contact accommodation pursuant to its Medically Restricted Policy ("MRP"). (Doc. 28-2 at ¶ 39, 63).

### A. VERIZON'S MID-ATLANTIC MEDICALLY RESTRICTED POLICY

Verizon implemented its Mid-Atlantic Medically Restricted Policy ("MRP"), effective in 1998, after negotiating the terms of the MRP with the Union. (Doc. 28-2 at ¶ 1). Under the MRP, Verizon agreed not to discharge an employee solely due to the employee's inability to perform some of their essential job functions with or without a reasonable accommodation. (Doc. 28-2 at ¶ 2). In 2011, during negotiations for a successor labor agreement, Verizon "placed a line in the sand" over its desired changes to the MRP. As the Union explained, "'[U]nlimited restricted duty' was something Verizon was not going to live with any longer." (Doc. 28-2 at 71). Effective October 19, 2012, Verizon implemented this amended Medically Restricted Leave of Absence Policy ("MR-LOAPA"). (Doc. 28-2 at ¶ 4). The MR-LOAPA requires Verizon to provide employees whose medical restriction(s) prevent them from performing an essential function of their job with or without reasonable accommodation with

---

[2] Plaintiff Dorward admits this statement "with clarification" that her symptoms were not limited to those listed by the Defendant. However, Plaintiff provides no cite to any evidence in the record for this statement. (Doc. 34 at ¶36).

[3] In responding to Defendant's Statement of Facts, Plaintiffs dispute that they requested "no customer contact" but again fail to cite to any portion of the evidentiary record in this case. (Doc. 34 at ¶¶ 37, 62). A review of Plaintiffs' deposition testimony reveals that both Dorward and Pugliese testified under oath at their depositions that they had indeed requested accommodations of "no customer contact." (Doc. 28-3 at 33, 77).

work they can physically perform for up to 150 days ("150-Day Light Duty Period"). (Doc. 28-2 at ¶ 5). During their 150-Day Light Duty Period, employees receive full pay and benefits. (Doc. 28-2 at ¶ 6).

Following the 150-Day Light Duty Period, if the employee remains unable to perform his or her job with or without reasonable accommodation, Verizon places the employee on unpaid leave with benefits. (Doc. 28-2 at ¶ 8). The total period of this accommodation under the MR-LOAPA (the 150-day period plus the unpaid leave of absence) is 52 weeks, as well as a finite extension in appropriate circumstances. (Doc. 28-2 at ¶ 8).

Under the MR-LOAPA, prior to the end of the 52-week period, Verizon engages in an interactive dialogue with any employee on the plan to determine, among other issues, the following: (1) if the employee has a prognosis for recovery shortly after the leave of absence expires that would justify a finite extension, and (2) whether a previously unavailable job will shortly become available with essential functions that the employee could perform with or without a reasonable accommodation. (Doc. 28-2 at ¶ 9).

While an employee is on the MR-LOAPA, Verizon searches for an available job in the same, equivalent or lower job classification for which the employee is qualified and medically able to perform, with or without a reasonable accommodation. (Doc. 28-2 at ¶ 10). The employee has both the ability and the corresponding duty to identify equivalent or lower paid positions that they can perform with or without a reasonable accommodation. (Doc. 28-2 at ¶ 11). If the employee is unable to return to work with or without reasonable accommodation in his or her job or in a vacancy for which he or she is qualified within 52 weeks and there are no factors justifying an extension, his or her unpaid leave of absence expires and Verizon separates

the employee from employment and pays the employee a generous termination allowance. (Doc. 28-2 at ¶ 12).

B.  THE CONSULTANT POSITION

Verizon Consultants are call center employees who provide sales and service support for customers. Their primary job responsibilities include the following, all of which occurs while speaking with customers over the telephone: (i) contributing to Verizon's revenue results by selling Verizon broadband, entertainment and telecommunications products and services; (ii) attaining a monthly sales objective through interviews and identifying customer needs to proactively offer for sale Verizon key broadband, entertainment and telecommunications products and services; (iii) investigating and resolving customer inquiries, disputes, and complaints regarding service, billings, and adjustments; (iv) responding to requests from customers for Verizon products and services; (v) verifying service order accuracy and completeness; (vi) investigating and resolving customer inquiries, disputes and service complaints; and (vii) promoting a positive corporate image and customer perception of Verizon and maintaining a high level of customer service on all customer accounts. (Doc. 28-2 at ¶ 18).

Approximately 90 percent of a Consultant's workday is consumed by handling incoming calls from customers. (Doc. 28-2 at ¶ 16). Another five percent of the Consultant's workday involves follow-up calls with customers to resolve outstanding issues. (Doc. 28-2 at ¶ 17). Customer interaction is "the whole reason for [the Consultant position's] existence…." (Doc. 28-2 at ¶ 16).

C.  ROXANNE DORWARD

Verizon hired Dorward as a Directory Assistance Operator on October 17, 1988, and later promoted Dorward to the position of Consultant on January 5, 2003. (Doc. 28-2 at ¶¶ 23-

24). Dorward remained a Consultant through her separation from employment. (Doc. 28-2 at ¶ 25). On February 21, 2011, Verizon supervisor Kim Shatrowskas issued Dorward a verbal warning for failing to follow Verizon's sales process during several customer calls. (Doc. 28-2 at ¶ 31). Dorward agreed that she "could have done better" on the customer calls that resulted in her February 21 verbal warning and admitted that she failed to follow Verizon's updated sales process. (Doc. 28-2 at ¶ 32).[4] At the time, Shatrowskas had no knowledge of Dorward's disability. (Doc. 28-2 at ¶ 34; Doc. 28-3 at 31).[5] Other than the February 21 verbal warning, Dorward received no other discipline from Shatrowskas. (Doc. 28-2 at ¶ 33).[6]

Verizon's normal business practice of monitoring of Dorward's customer calls caused Dorward to suffer from stress. (Doc. 28-2 at ¶ 35).[7] Her stress manifested as a difficulty talking, thinking, concentrating and relating to others. In addition, Dorward suffered from a lack of desire to participate in social activities. (Doc. 28-2 at ¶ 36.)

---

[4] Dorward does not dispute that she received a verbal warning for failing to follow the sales process during calls, but offers that she was "unable to follow the designated proper sales process due to her disability." (Doc. 34 at ¶ 31). Again, Dorward fails to cite to any evidence in the record to support this fact.

[5] In response to this statement, Dorward claims that she is "unsure of what Shatrowskas did or did not know at this time" (Doc. 34 at ¶ 34) but testified under oath at her deposition that she did not know of Dorward's medical condition prior to March 8, 2011 (Doc. 28-3 at 31) and also submitted to the PHRC, under penalty of perjury, that "the Respondent learned of my disabilities in April 2011" (Doc. 28-3 at 56).

[6] Dorward does not dispute that this was the only "formal discipline" received by Defendant. (Doc. 34 at ¶ 33).

[7] Dorward does not dispute this but further claims that Verizon's monitoring was also implemented to harass the Plaintiff. Again, Dorward cites to nothing in the evidentiary record to support this claim or dispute Verizon's statement. (Doc. 34 at ¶ 35).

In March 2011, Dorward requested a work accommodation that she be able to work as a Consultant with no customer contact. (Doc. 28-2 at ¶ 37).[8] Defendant granted Dorward's request for a no customer contact accommodation pursuant to its Medically Restricted Policy ("MRP"). (Doc. 28-2 at ¶ 39). Dorward maintained her compensation and benefits. (Doc. 28-2 at ¶ 40). Dorward disputes Verizon's assertion that her job title remained unchanged, instead pointing to an email wherein a sales manager for Verizon, Lynn Silinskie, references utilizing its "offline consultants" for her assertion that her job was changed to "Offline Consultant." (Doc. 34 at ¶ 40; Doc. 33-1). Defendant, in response, has provided a declaration by Silinskie, in which she states that her reference to "offline consultants" merely was to those "employees on the MRP who could not perform the essential duties of the Consultant position" and that there "is no position within Verizon of 'Offline Consultant.'"[9] (Doc. 35 at 18). From March 11, 2011, through the remainder of Dorward's active employment with Verizon, Dorward had no customer contact. (Doc. 28-2 at ¶ 41).

---

[8] In responding to Defendant's Statement of Facts, Plaintiffs dispute that they requested "no customer contact" but again fail to cite to any portion of the evidentiary record in this case. (Doc. 34 at ¶¶ 37, 62). A review of Plaintiffs' deposition testimony reveals that both Dorward and Pugliese testified under oath at their depositions that they had indeed requested accommodations of "no customer contact." (Doc. 28-3 at 33, 77).

[9] In ruling on a motion for summary judgment, a court may consider, among other things, affidavits when determining whether no genuine issue of material fact exists such that a party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Saldana v. Kmart Corp.*, 260 F.3d 228, 231–32 (3d Cir.2001). Affidavits filed in support of a motion for summary judgment may be considered for the purpose of ascertaining whether a party has raised an issue of fact. *Frederick Hart & Co. v. Recordograph Corp.*, 169 F.2d 580, 581 (3d Cir.1948).Reply affidavits that respond only to the opposing party's brief are properly filed with the reply brief. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456 (6th Cir. 2002).

Effective October 19, 2012, pursuant to the MR-LOAPA, Verizon placed Dorward on the amended restricted employee plan. (Doc. 28-2 at ¶ 42). Verizon provided Dorward with multiple communications informing her that her 150-Day Light Duty Period would expire on March 17, 2013. (Doc. 28-2 at ¶ 43). This correspondence also informed Dorward that following her 150-Day Light Duty Period on the MR-LOAPA, she would receive unpaid medical leave with benefits for approximately seven months. (Doc. 28-2 at ¶ 44). Dorward's medical restriction of no customer contact persisted through her 150-Day Light Duty Period, and Verizon then placed her on an unpaid leave of absence in March 2013. (Doc. 28-2 at ¶ 45). Verizon continued to provide Dorward with medical and other benefits during this unpaid leave. (Doc. 28-2 at ¶ 47).

On June 18, 2013, Dorward confirmed to Verizon's head of its workplace accommodation team Cathy Grollimund that Dorward's medical restriction of no customer contact persisted and noted her ability to only perform offline work. (Doc. 28-2 at ¶ 48). Although in her response to Verizon's statement of facts, Dorward submits that she was "not completely unable to communicate with customers" the undisputed record indicates that she told Verizon on June 18, 2013 that "she cannot speak to customers, incoming or outgoing calls, unable to talk to ANY customers on the phone or face to face." (Doc. 28-3, at 119).

On October 3, 2013, several weeks prior to the exhaustion of her unpaid leave of absence, Dorward confirmed to Verizon workplace accommodation team member Gina Spath that Dorward's medical restriction of no customer contact persisted and noted her ability to only perform offline work. (Doc. 28-2 at ¶ 49). Dorward also stated that "at this point, there are no accommodations that she or her doctor could request that would enable her to fully perform her essential functions as a Consultant." (Doc. 28-3 at 124).

9

Dorward's medical restriction continued following the exhaustion of her unpaid leave of absence, with no indication of improvement within the foreseeable future. As such, effective October 19, 2013, Verizon separated Dorward from employment and paid Dorward approximately $71,000.00 as a termination allowance. (Doc. 28-2 at ¶ 52).

At Dorward's request, the Union challenged her separation from employment through the grievance procedure outlined in the collective bargaining agreement. (Doc. 28-2 at ¶ 53. After investigating Dorward's separation from employment, the Union concluded that Verizon complied with the collectively bargained MR-LOAPA and her claims lacked merit. (Doc. 28-2 at ¶ 54). Dorward does not dispute that this conclusion was reached, but does dispute the accuracy of the conclusion, again, without any supporting documentation or citations to the record. (Doc. 34 at ¶ 54). The Union informed Dorward's of its findings and closed the grievance without proceeding to arbitration with the Company. (Doc. 28-2 at ¶ 54).

D. SHARON PUGLIESE

Pugliese began working as a Consultant for Verizon in 1997. From 1997, through her separation of employment in 2013, Pugliese retained the Consultant job title. (Doc. 28-2 at ¶ 55). On October 12, 2010, Shatrowskas issued Pugliese a written warning for failing to follow Verizon's sales process during several customer calls. (Doc. 28-2 at ¶ 57). At the time Shatrowskas issued the warning to Pugliese, Shatrowskas had no knowledge of Pugliese's

disability. (Doc. 28-2 at ¶ 59). [10] Further, this written warning was the only discipline Pugliese

ever received. (Doc. 28-2 at ¶ 58).

In December 2010, Pugliese was diagnosed with general anxiety disorder. (Doc. 28-2 at

¶ 60). As a result of Pugliese's medical condition, Pugliese had difficulty talking, thinking,

relating to others and concentrating. (Doc. 28-2 at ¶ 61). Therefore, Pugliese requested a work

accommodation that she be able to work as a Consultant with no customer contact. (Doc. 28-2

at ¶ 62). [11] Pursuant to the MRP, Verizon granted Pugliese's no customer contact

accommodation and maintained Pugliese's compensation and benefits. (Doc. 28-2 at ¶ 63).

Pugliese disputes Verizon's assertion that her job title remained unchanged, instead pointing to

an email wherein a sales manager for Verizon, Lynn Silinskie, references utilizing its "offline

consultants" for her assertion that her job was changed to "Offline Consultant." (Doc. 34 at ¶

64; Doc. 33-1). Defendant, in response, has provided a declaration by Silinskie, in which she

states that her reference to "offline consultants" merely was to those "employees on the MRP

who could not perform the essential duties of the Consultant position" and that there "is no

position within Verizon of "Offline Consultant."" (Doc. 35 at 18). From December 2010,

---

[10] In response to this statement, Pugliese claims that she is "unable to confirm what Shatrowskas did or did not know" (Doc. 34 at ¶ 59) but testified under oath at her deposition that she was not diagnosed with anxiety or depression until October or November after she was disciplined (Doc. 28-3 at 83) and also submitted to the PHRC that her employer learned of her disability on December 17, 2010 (Doc. 28-3 at 98).

[11] In responding to Defendant's Statement of Facts, Plaintiffs dispute that they requested "no customer contact" but again fail to cite to any portion of the evidentiary record in this case. (Doc. 34 at ¶¶ 37, 62). A review of Plaintiffs' deposition testimony reveals that both Dorward and Pugliese testified under oath at their depositions that they had indeed requested accommodations of "no customer contact." (Doc. 28-3 at 33, 77).

through the remainder of Pugliese's active employment with Verizon, Pugliese had no customer contact. (Doc. 28-2 at ¶ 65). In addition, from December 2010 through the remainder of Pugliese's active employment with Verizon, Pugliese never regained an ability to communicate with customers and never requested a position that required customer contact. (Doc. 28-2 at ¶ 66). Pugliese admits this, but claims that if the "harassment was not there" she "could have possibly went back on the phone." She then concedes that she "could not go back on the phones under those conditions." (Doc. 28-3 at 86).

Effective October 19, 2012, pursuant to the MR-LOAPA, Verizon placed Pugliese on the amended restricted employee plan. (Doc. 28-2 at ¶ 67). Verizon provided Pugliese with multiple communications informing her that her 150-Day Light Duty Period would expire on March 17, 2013. (Doc. 28-2 at ¶ 68). This correspondence also informed Pugliese that following her 150-Day Light Duty Period, she would receive an unpaid leave of absence with benefits for approximately seven months. (Doc. 28-2 at ¶ 69). Pugliese's medical restriction of no customer contact persisted through her 150-Day Light Duty Period, and Verizon placed her on an unpaid leave of absence in March 2013. (Doc. 28-2 at ¶ 70).[12] Verizon continued to provide Pugliese with medical and other benefits during this unpaid leave. (Doc. 28-2 at ¶ 72).

---

[12] Though in her response Pugliese disputes that she was completely unable to communicate with customers, she admits that she was unable to do so due to her disability caused by Defendant, and further, admits in her deposition that she did not have any customer contact from the initial restriction in December 2012 through the date of her termination, and that she still required that restriction through the date that she was terminated. (Doc. 28-3 at 93).

On July 10, 2013, Pugliese confirmed to Verizon's head of its workplace accommodation team Cathy Grollimund that Pugliese's medical restriction of no customer contact persisted and noted her ability to only perform offline work. (Doc. 28-2 at ¶ 73; Doc. 28-3 at 110). Although in her response to Verizon's statement of facts, Pugliese submits that she was "not completely unable to communicate with customers" the undisputed record indicates that she told Verizon that she "cannot speak to customers." (Doc. 28-3, at 110). On October 3, 2013, several weeks prior to the exhaustion of her unpaid leave of absence, Pugliese confirmed to Verizon's workplace accommodation team member Anne Oomen that Pugliese's medical restriction of no customer contact persisted. (Doc. 28-2 at ¶ 74).

Pugliese's medical restriction continued unabated following the exhaustion of her unpaid leave, with no indication of improvement within the foreseeable future. As such, effective October 19, 2013, Verizon separated Pugliese from employment paid Pugliese approximately $80,000.00 as a termination allowance. (Doc. 28-2 at ¶ 77).

On October 7, 2014, Plaintiffs filed their Complaint (Doc. 1). On January 20, 2015, Verizon filed its Answer and Affirmative Defenses (Doc. 7). On May 5, 2016, following discovery, Verizon filed the instant motion for summary judgment, together with its brief in support and statement of facts. (Doc. 28). On June 20, 2016, Plaintiffs filed their brief in opposition to the motion (Doc. 33) and their answer to the statement of facts (Doc. 34). On July 5, 2016, Verizon filed its reply brief (Doc. 35). This matter was referred to the undersigned for a report and recommendation on October 12, 2016 (Doc. 38). This matter is now ripe for disposition.

13

## II.   DISCUSSION

Defendant has moved for summary judgment on three grounds: (1) that Plaintiffs are not qualified individuals under the ADA and PHRA because they were unable to perform the essential duties of the Consultant position with or without a reasonable accommodation; (2) that Plaintiff's requests for indefinite light duty positions would eliminate the essential duties of the Consultant position and therefore were not required by either the ADA or the PHRA; and (3) that if Defendant had acquiesced to Plaintiffs' requests for indefinite light duty positions, it would have violated the collective bargaining agreement and federal labor law. In response, Plaintiffs submit that summary judgment should be denied as there is a material question of fact as to whether Plaintiffs can perform the essential functions of their job with or without a reasonable accommodation, and thus, whether Plaintiffs are "qualified individuals" under the ADA and PHRA.

### A.   SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury ... could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "[T]his standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986) (emphasis in original).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F.Supp.2d 490, 493 (E.D.Pa. 2010) (*citing Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)); *see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

B. Claims Pursuant to the Americans with Disabilities Act and Pennsylvania Human Relations Act

The purpose of the Americans with Disabilities Act is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities...." 42 U.S.C.A. § 12101(b)(1).Under the ADA, an employer cannot discriminate against a qualified individual with a disability because of her disability in regard to her employment. 42 U.S.C.A. § 12112(a). Further, an employer must make reasonable accommodations to known physical or mental limitations of an otherwise qualified employee with a disability unless such employer can demonstrate the accommodation would impose an undue hardship on the operation of the employer's business. See *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir.1999) (holding that "[d]iscrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities."). The Court's analysis under the ADA applies equally to plaintiff's claims under the PHRA. See *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996).The plaintiff has the initial burden in an ADA matter of establishing a prima facie case. *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3rd Cir.1996); *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3rd Cir.1995). A prima facie case is established by the plaintiff when she demonstrates: 1) she is a disabled person within the meaning of the ADA; 2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) she has suffered an otherwise adverse employment decision as a result of discrimination. *Shiring v. Runyon*, 90 F.3d 827, 831 (3rd Cir.1996); *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3rd Cir.1998).If the plaintiff meets this initial burden, the court then applies the next step in "the familiar burden-shifting framework of

16

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803-805." *Abramson v. William Patterson College*, 260 F.3d 265, 281 (3d Cir.2001). The burden of production shifts to the employer to "proffer a legitimate, non-discriminatory reason for the adverse employment decision." *Id*. at 282. An employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Pierske*, 32 F.3d 759, 763 (3d Cir.1994). "The employer need not prove that the tendered reason ***actually*** motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes,* 32 F.3d at 763. (emphasis in original). Once the employer meets this burden, the plaintiff must show that a jury "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

## C.  PLAINTIFFS ARE NOT QUALIFIED INDIVIDUALS UNDER THE ADA

Verizon first moves for summary judgment on the grounds that neither Dorward nor Pugliese is a qualified individual under the ADA or PHRA. Plaintiffs must be able to establish, as a prima facie case, that they were qualified to perform the essential functions of the job of Consultant at the time they were terminated, with or without reasonable accommodation. *Barclay v. Amtrak*, 435 F. Supp. 2d 438, 444 (E.D. Pa. 2006), *aff'd*, 240 F. App'x 505 (3d Cir. 2007); *see Gaul v. Lucent Tech*., 134 F.3d 576, 580 (3d Cir.1998). Specifically, Verizon submits that no reasonable accommodation existed that would have allowed Dorward and Pugliese to perform the Consultant position, given their inability to interact with customers. Dorward and Pugliese assert that Verizon created new positions for them called "Offline Consultants" and that customer interaction was not an essential duty of that position. Plaintiffs submit therefore,

that a question of fact exists as to whether Plaintiffs were employed as "Consultants" or "Offline Consultants" and as such, summary judgment is inappropriate.

It is admitted by Plaintiffs, and undisputed in the record, that both Dorward and Pugliese were hired in the Consultant role and they performed these customer consulting duties for varying periods. (Doc. 28-2 at ¶¶ 24-25 & 56). Consultants are call center employees who provide sales and service support for customers, and their primary job responsibilities all occur (Doc. 28-2 at ¶ 18). Approximately 90 percent of a Consultant's workday is consumed by handling incoming calls from customers. (Doc. 28-2 at ¶ 16). Another five percent of the Consultant's workday involves follow-up calls with customers to resolve outstanding issues. (Doc. 28-2 at ¶ 17). Customer interaction is "the whole reason for [the Consultant position's] existence…." (Doc. 28-2 at ¶ 16).

Further, despite Plaintiffs assertions that they were employed in the position of "Offline Consultants" the record reflects that no such position existed with Verizon. Plaintiffs admit that, for the duration of their employment with Verizon, they were "Consultants." (Doc. 28-2 at ¶¶ 25, 55). Despite admitting that they were employed as Consultants for the duration of their time with Verizon, Plaintiffs later dispute Verizon's assertion that their job title remained unchanged, but the only evidence in support of their claim that they held new positions of "Offline Consultants" is an email wherein a sales manager for Verizon, Lynn Silinskie, references utilizing its "offline consultants" for her assertion that her job was changed to "Offline Consultant." (Doc. 34 at ¶ 40; Doc. 33-1). Defendant, in response, has provided a declaration by Silinskie, in which she states that her reference to "offline consultants" merely was to those "employees on the MRP who could not perform the essential duties of the Consultant position" and that there "is no position within Verizon of 'Offline Consultant.'"

18

(Doc. 35 at 18). As such, the Court finds that there is no genuine dispute of material fact that Plaintiffs were employed throughout their time at Verizon as Consultants, and that a position within Verizon of "Offline Consultant" did not exist.

The Court further finds that Dorward and Pugliese cannot establish that, as of the dates they were terminated, they were qualified to perform the essential functions of the job, with or without reasonable accommodation. *Barclay v. Amtrak*, 435 F. Supp. 2d 438, 443–44 (E.D. Pa. 2006), *aff'd*, 240 F. App'x 505 (3d Cir. 2007); *see Gaul v. Lucent Tech.*, 134 F.3d 576, 580 (3d Cir.1998) (individual must be able to perform the essential functions of job at the time of the employment decision). Determining whether an individual is "qualified" under the ADA involves a two-part test. First, a court must consider whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc. Second, the court must consider whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation. *Barclay*, 435 F.Supp. 2d at 444.

Verizon does not dispute that Plaintiffs had the proper education and experience to do the job of Consultant. Rather, Verizon submits that Plaintiffs are not "qualified" because they are not able to perform the essential functions of the position of Consultant, with or without accommodation. The ADA was intended to prevent employers from irrationally discriminating against employees who, though suffering from a disability, are nonetheless qualified to perform their jobs either with or without reasonable accommodation. It does not, however, require an employer to retain an employee who cannot perform the essential functions of the job even with accommodation. *See Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir.1998) (en banc) (to be

19

"qualified individual" protected by ADA, employee must be able to perform essential functions of job).

It is true that for a few months, Verizon had Plaintiffs working as Consultants without any customer contact, notwithstanding the undisputed evidence that customer contact is an essential element of the "Consultant" position. (Doc. 28-2 at ¶¶ 16 – 18). The offline position to which they were temporarily assigned was not an official position, but had been created by Verizon to give Plaintiffs something to do on a temporary basis. Plaintiffs' suggestion that they would have been qualified to perform the requirements of such a position does not advance their case because under the Act **employers are not required to create positions specifically for the handicapped employee**. *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996) (emphasis added); *see also Winfrey v. City of Chicago*, 259 F.3d 610, 616 (7th Cir. 2001) (if an employer bends over backwards to accommodate a disabled worker ... it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation) (internal citations omitted). It is further undisputed that Plaintiffs, as of the date of their termination, were unable to work with customer contact. (Doc. 28-2 at ¶¶ 49, 52, 70, 73 and 74; Doc. 28-3 at 110, 124). Given that Plaintiffs were unable to perform an essential element of the Consultant position, namely have customer contact, the Court finds that Plaintiffs are not qualified individuals under the ADA.

D. REMAINING ISSUES

Having determined that Plaintiffs are not qualified individuals under the ADA, the Court need not reach the issues of whether Verizon failed to accommodate the disability or failed to engage in the interactive process. *See Solomon v. Sch. Dist. of Philadelphia*, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012) ("A plaintiff alleging discrimination under the ADA based on

[failure to accommodate or engage in an interactive process] must show that (1) she is disabled, **(2) she is qualified**, and (3) her employer (i) refused to provide her with a proposed reasonable accommodation, or (ii) failed to engage in an interactive process after she requested an accommodation, though a reasonable accommodation was possible.") (emphasis added).

III.    **RECOMMENDATION**

Based on the foregoing, it is recommended that the Court **GRANT** Defendants' Motion for Summary Judgment, judgment be entered in favor of the Defendant, and the Clerk of Court be directed to **CLOSE** this case.

Dated: February 2, 2017                    *s/ Karoline Mehalchick*
                                           **KAROLINE MEHALCHICK**
                                           **United States Magistrate Judge**

21

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROXANNE DORWARD and
SHARON PUGLIESE,

               Plaintiffs

      v.

VERIZON PENNSYLVANIA, INC.,

               Defendant

CIVIL ACTION NO. 1:14-CV-01943

(KANE, J.)
(MEHALCHICK, M.J.)

### NOTICE

    **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **February 2, 2017**.

    Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: February 2, 2017**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**